Mr. Tobin. Good afternoon to this honorable and esteemed court. My name is Tony Tobin for the appellant, last name T-O-B-I-N. I want to discuss two issues, the main issue being ineffective assistance of counsel at the penalty phase, and then I want to briefly touch upon the argument I made in a supplemental brief regarding Harrington v. Richter. The Seventh Circuit in Emerson v. Gramley once stated that there's a difference between an attorney who does nothing and one who could have done a little bit more. Well, this is the case where the attorney did nothing. The petitioner had the functional equivalent of no counsel at the penalty phase. In the penalty phase, Attorney Lewis presented no evidence of the defendant's mental health condition, his mental health problems, no family history of violence, substance abuse, or the family history of mental illness. Now, did he put on any of the evidence from either – any mental health evidence? That's an important point, Your Honor. In this case, in the Riverside case, the competency hearing occurred about a year before the filing of the information, so a different jury heard all the evidence regarding the competency issue, but I can only assume that a different issue – a different jury heard the issue regarding the guilt phase and the sanity phase, because obviously a year had passed. So the defense had rested. Either guilt phase, was there mental health evidence? No, Your Honor. And was the record from the competency phase entered? Do we know that? Not to my knowledge, Your Honor, no. So as far as you know, there was nothing. As far as I know, there was nothing. And nothing was presented at the sanity phase with the exception that – You said there wasn't a sanity phase, you just said. I'm sorry. There was nothing. Penalty. At the penalty phase, I'm sorry. At the penalty phase, he only presented the testimony of his – of the Petitioner's sister to testify that he became sick in the head after leaving prison. Right. So assuming all that, then your issue – your question is prejudiced, given the fact that we are constrained, as I understand it, by Harrington, which you want to talk about, to assume that the California Supreme Court found anything that might stand up with regard – that we have to defer to. So let's assume for the moment they found there was no prejudice. Would we have to defer to that? Absolutely not, because it's – the penalty phase is the most important proceeding in the American justice system, and doing nothing is not a defense. That isn't – how should I put it? When discussing prejudice, a jury can rely on – let's say that mental health evidence had been presented. Let's say that child abuse had been presented as evidence. A jury can give whatever sympathetic or moral value it can to those litigating factors. Right. Right. But part of the argument on the other side, as I understand it, is that that evidence all came in in the Orange County trial, and the jury still entered a death penalty. My response to that would be that you could have a single juror sitting on that Riverside jury saying, you know what, he was abused as a trial, he has significant mental health problems from 1968 to 1984, and although, granted, there's an overwhelming case for aggravation, I find that he and his life should be spared. But, in fact, the child abuse evidence as such didn't come in to the Orange County. That did not come in as well. And, in fact, it should have come in, because Dr. Medina – I mean, it didn't go in in the Orange County trial either. Well, the Orange County trial, that did not come in. That is a major issue in the Orange County case. And I would, just to point out, to gear back to that case, Junior Medina did testify in the sanity phase in Orange County that he was beaten by his father because of the eyelash incident. Now, there was a difference in time when the sanity phase occurred before – there was like a two-month period before the penalty phase in which a criminal juror could have done adequate investigation into child abuse. That should have spurred an investigation, but I need to veer back into Riverside. In terms of prejudice, once again, the Supreme Court has made it clear that the omitted mitigating evidence does not need to outweigh the aggravating evidence. It just needs to be of such quantity that – Well, I gather – what happened in the Riverside case, I gather, was that the government lawyer was concerned because there would have been no case put on mitigation. And so there was some inquiry at the trial. That's right. And is there anything in the record as to the lawyer's reasons other than that? Are there – I know there's depositions and affidavits from Kremer, but what about from the lawyer in Riverside? Lewis is – well, Lewis has actually been quite honest in the State Davies proceeding. He said, no, I did not have a tactical basis for not presenting that evidence. There is some evidence in – at the trial that – The judge came up with reasons. Yes. The judge questioned him, and he said, well, you know, maybe you don't want to present – maybe you don't want to bring in this evidence because it might bring in evidence from the Orange County trial or something like that. But if we look at the – if we look at what they presented in the penalty phase at the Riverside trial, in addition to the – in addition to the Martin sling, you also had the three Orange County homicides were also admitted at the penalty phase. In addition to all of the violent felonies that Medina had committed between the years 1968 and 1984, as well as his very violent prison crimes. All right. So given your – I'm willing to state that I actually agree with you that his counsel was deficient. But what we're looking at, unfortunately, under Harrington v. Richter, we're having to look at this California Supreme Court summary denial, so we have to decide  whether the Supreme Court could have found that it was not prejudicial. And that's a really – I mean, I don't agree with that standard, and I think it's a very difficult standard to meet. But that's the standard we have to define. So what's your argument on that point? Well, I don't think a – if we are applying the Harrington v. Richter standard I'll deal with the – there's a substantial issue. Can you help me by answering that question? Well, my answer is that Harrington v. Richter, even if we apply that standard, no reasonable jurist can permit – no reasonable jurist can permit a nonperformance at a penalty phase. And I think that just has to be a standard of the American justice system. Some effort has to be made to protect the life of that defendant. Right. But I – okay. As a principal, as an adult principal, I agree. But as a matter of reviewing the State court decision? It's not – it's – the California Supreme Court, if they found that that was not prejudicial, then that is an unreasonable decision. Because there is, under the very fluid system of the California death penalty law, in which you don't have – you just have a small pool of mitigating evidence. Even though there's a tidal wave of aggravating evidence, one juror can rely on that small pool of mitigating evidence. So, sorry. You're essentially saying that, that being the case, that no degree of prediction as to what would have been the outcome, looking at the actual mitigating evidence and the actual aggravating evidence, could – well, I suppose you could say, well, this mitigating evidence had to come in, was, you know, considerably more than zero. So let's take the actual mitigation. And you're saying, given that actual mitigation, you just – you don't do a balance. You're just saying, this mitigation is, you know, enough more than zero that they just couldn't say it was not prejudicial. It's a – it's a normative and – I believe it's a normative process. It's not a mechanical counting system. And yes, they could have. And certainly, it's actually – it's actually quite compelling, mitigating evidence of – and whether that, you know, that evidence, you know, the mental health evidence is defined as paranoid schizophrenia or whether we put an antisocial label on it or whatever. All the experts agree that there's some kind of intermingling of the two conditions. There's – there is a hybrid. And that's even discussed in Judge Liu's decision that, for example, Dr. – Well, but then what do we do with the – so let's put that in one box. Then you have the child abuse evidence, which, in the other case, the conclusion was that Kramer certainly didn't do nothing. He did quite a lot. Didn't find it out because, essentially, his client wasn't going to tell him and his client's family wasn't going to tell him, and he wasn't ineffective because he had a viable mitigation case, even if it wasn't that one. So how does that translate over to this case? Let's assume we thought that was right. How does that translate over to this case? Let's – or let's assume that if this was an – that was an AEDPA – post-AEDPA determination, we would defer to it. Then what do we do next? Well, in terms of a discussion of the case. In this case. I mean, in this case, he didn't do what Kramer did. He didn't do anything. So do we then carry the child – the later developed child abuse evidence over? I think it does carry over, and – And I have a question about that. How much of it is in the California habeas record? Because that's the only thing we can use. In terms of the child abuse evidence, that is – all of that was actually presented in the state habeas petition, so we don't have a pinholster issue that was presented. I can't make any citations in any particular portion of the record, but our briefings have made clear that the child abuse evidence was presented in the state habeas petition. So what was the whole hearing about? I'm sorry? So what was the whole hearing about? Well, it turns out it was about Attorney Lewis's failure to present any evidence of child abuse in the mental illness at the penalty phase. Or that was in large measure what it was about. Real quick, with regard to Harrington v. Richter, there was – I did submit a supplemental brief in October of last year. I think it is unfair to apply – what Harrington v. Richter asks, when you have a situation where there's a summary disposition, Harrington v. Richter asks the reviewing court to say what reason the State court could have denied relief. Now, there's kind of an interesting wrinkle in this case because we're dealing with a California capital defendant. When he does a – he does his habeas petition, it goes directly to the California Supreme Court. All right. So I know you make that assertion, but we couldn't find any rule that says it has to go directly to the Supreme Court. Yes, it does. It's actually California Rule of Court 8551. Well, actually, that's the rule of court where it says a superior court has to give a reasoned decision. But as I recall from the California Rules of Court, that the initial habeas petition is – it's not – it's part of the automatic review process in California. I'm not sure. It might be in the Rules of Court. I think it's also in some opinion. You don't cite anything, which did not make it easy for us. I believe at some point they said you have to file this within 90 days of filing your opening brief because they want to do it all at once. And I – they may have said in the California Supreme Court. That was certainly the assumption, but it would be sure helpful if we knew that. I'm not aware of the – I cannot cite the specific authority where it says the initial habeas petition has to go to the State Supreme Court. But we have a backlog in California as bad as it is. I imagine if habeas petitions were going to the initial superior court, or the court of appeals. Well, I think it may say it, but you haven't supplied it. Right. Perhaps I could supply that authority after the hearing. Certainly. But, like, once again, the California capital defendant does not have an opportunity to go to the superior court and get that reasoned decision. So you have sort of an unfair treatment of the capital defendant because if I'm a not capital defendant in California, I can go to the Superior Court. But what you're really pointing to is that the whole lack of symmetry is kind of peculiar anyway, that if a court chooses to say nothing, they get more deference than if they say something. One suspects that's going to give way at some point, in one direction or another. I would also point out that the Kennedy case, Kennedy v. Adams, was upheld and the Ninth Circuit still applies the look-through doctrine. So if we have a reasoned decision in the State court, the reviewing court looks through the summary. But there's no – you would have to find a constitutional right to a reasoned decision. I don't know where it's coming from. Well, I would only point out, I believe that Richter should be limited to its facts and it should only apply in cases where you have a summary disposition in a noncapital case, because otherwise it's just uncompetently unfair to capital defendants and the high court has always been cognizant of that. But what would we do anyway? I mean, that was basically our rule before, anyhow. Isn't that basically our rule? Well, I think it is different, because I think this Court can look at the California Supreme Court decision and say under, say, Williams v. Taylor and say, that's objectively unreasonable. Sure, if they said something, but they didn't say anything. So you can still apply that. But under Richter, you have to dredge up ways in which that could be. I think it's almost – I think it's taking deference. I mean, we always had this phrase that said something about if they don't say anything, we find out whether it's reasonable on the record. Well, it's essentially the same thing, isn't it? I mean, you can't do anything but make up reasons when you don't have reasons. I think it takes deference to a whole new different level, to the point of mere abdication. I don't think – I don't think that's what Congress intended. So I think while Harrington is a wise decision, it should be limited to its facts. Thank you, counsel. We'll give you some time for a follow-up. Ms. Wilkins. Thank you, Your Honor. May it please the Court, Holly Wilkins, Supervising Deputy Attorney General for the Appellee Respondent. In listening to counsel's arguments, I believe he's blurring the two prongs of Strickland, combining the deficient performance with the prejudice prong. Clearly, the California Supreme Court could reasonably have denied this claim on the prejudice prong alone. As even the habeas experts conceded, the evidence of child abuse is rather thin in this case, certainly not at the level we have seen in other cases relied upon. Well, you don't mean – you don't mean the – I gather – I couldn't quite figure out what he meant, but I think what you mean, or what he meant, was it's not so much that the evidence was thin as that the child abuse wasn't as terrible as in a lot of other cases. Is that what you mean by it was thin? Correct. Yes. With respect to the beatings that Mr. Medina experienced, as jurors would no doubt appreciate and as many of the experts commented, those were not unusual for the time in which Mr. Medina was being raised. For example, the site to beatings by nuns at the Catholic school he attended, the use of belts and straps and striking of children was not unusual in the 1950s. And to suggest that this evidence, that there would be a reasonable possibility that this type of mitigation evidence would have resulted in a different outcome in the penalty phase ignores the very aggravating evidence. As Judge Liu noted, Mr. Medina's violence did not end once he was in prison. There were numerous in-custody assaults. But it is true that the reasons why – I mean, this was so obviously unusually, you know, vacant in terms of a penalty phase mitigation case that the – it was commented on during the trial. And the trial judge gave reason – I mean, sort of put words in the mouth of a lawyer who didn't have any words about why he might have done this. And at least several of them just couldn't have been it. I mean, one of them was to keep the violence – aggravation from coming in, and all of it came in. So that couldn't have been it. I agree that the violent offenses were before the jury as evidence in aggravation, but defense counsel did affirm the validity of the trial court's speculation. I know he said it, but it didn't make any sense. I mean, what was he going to say? I'm completely – I don't try to do anything? Well, but he – I mean, have you ever seen a case where the prosecutor says, I think the mitigation case has been so screwed up, you better ask him why, essentially? Well, the prosecution certainly didn't suggest there was malfeasance. It is not unusual for the prosecution to ask for a record to be made when there is no particular evidence forthcoming, similar to what was presented in Orange County. But with respect to concerns about violence, there was a very legitimate concern about not putting on psychiatric evidence. And the habeas presentation makes that plain. When you – when you start putting the conflicting opinions of experts before the jury, and counsel mentioned that. Well, but there wasn't a legitimate reason when the alternative was nothing. In other words, the worst thing that could happen is they wouldn't believe the mental health evidence. And they might. It was pretty strong in some ways. I mean, it went back a ways. There were before this case, and there was some consistency in the findings, and there were other people who disagreed with it. But what – how could nothing be better than something? Well, as the Supreme Court has made plain, with benefit of hindsight. Well, this isn't benefit of hindsight. It was obvious at the time, and that's why it came up at the time. Well, what was obvious to defense counsel was how the Orange County proceeding had gone. Well, but we also know that the defense counsel didn't even read the Orange County proceedings and didn't read the – the – Mr. Lewis clearly fell on his sword. And that need not detain the Court, because as the Supreme Court has made clear, it is objective. Do you think he was lying? He did read it? I think Mr. Lewis was a very zealous advocate on behalf of his client. And I think he tried very hard to do everything he could. And I think he defended him well. The absence of a sanity phase was obvious. There were no experts that would have attested to his being legally insane at the time, nor was there anything about his monetarily motivated crimes that would have suggested that. Well, I understand that. That makes sense. But the defense – the penalty phase presentation was so anemic, and the only witness he put on really blew up on him. I just – I mean, it's a – there doesn't seem to be a strategic reason why you wouldn't put on whatever you have in penalty phase, especially when, as you pointed out, there were so many aggravating factors that were present in the case. Well, counsel suggested that being a sociopath is mitigation evidence. There's nothing to support the suggestion that being a sociopath is mitigating evidence. But there was some evidence otherwise. There was at least conflicting mental health evidence, right? The conflict is not evident when considering the experience and qualifications of the experts. The courts have observed that you can find an expert to say virtually anything. Well, I mean, you, for example, beat up terribly on Dr. Rosenbaum. That was later, I understand it, who was apparently a professor of psychiatry at Stanford for many years with a rather impressive resume. Dr. Rosenbaum is impressive, but not as a forensic psychiatrist. And there's a reason that they turned to Dr. Rosenbaum, who had never done a forensic evaluation in order to assess their client. And it would not be compelling. But that doesn't – you have reasons and you have a theory about him. But if somebody had put him on, that isn't to say a jury couldn't have been impressed with a guy. He's an impressive guy. A jury is not going to be impressed when an individual over 27 days executes four gas station attendants. And as Judge Creever – Well, that's what I'm saying. He's got a tough, aggravating case, and he didn't put anything on. And the only witness he put on, I think, hurt him. He put on the sister. Who then said, yeah, I think you might kill me. She expressed fear of her brother. Not helpful. The entire theory was consistent with the theory in Orange County, which was that Mr. Medina was normal. He grew up. He got into drugs. He got into alcohol. He violated the law. He went to prison, and prison changed him. It was a rational, tactical decision. But it needn't detain the Court, because the true issue is, is it debatable among reasonable jurists to resolve this issue on the prejudice prong? Could a reasonable jurist conclude that given the overwhelming weight of the aggravating evidence, there is no reason – Well, I mean, we do have a lot of cases saying that in cases – I mean, this case was a bunch of repeated crimes, and of young people who didn't do anything. But, I mean, so it wasn't awful. But some of the other cases were, you know, incredible, were sort of sadistic and gory, and we still said, the Supreme Court has still said, well, but somebody might think it was mitigating. So the question is really the strength of the mitigating evidence more than the strength of the aggravating evidence under the case law, isn't it? It is a comparison of that mitigation to the aggravation. And here, as was aptly noted by Judge Kreeber in his deposition and testimony, you go before a jury with an individual who chose not to work because it was too hot when the largesse of his family – By the way, I saw that in your brief, but I never found it in the record. I'm assuming it's there because you said it, but I couldn't find it. His sister testified that Mr. Medina declined to work because he didn't care to work in the heat. And you have four hardworking young men with their entire lives ahead of them whom he executes for a few hundred dollars. No jury is going to be persuaded that Mr. Medina's childhood was such that it outweighs having executed four clerks in attendance in order to buy parts for his Jeep that his sister gave him to fix up. The mitigation evidence is de minimis. And with respect to the diagnoses of schizophrenia, as Dr. Thomas, who is one of habeas counsel's experts, made plain, a schizophrenic is less likely to violate the law than the general population. Mr. Medina's mental condition, whatever it may be, and everyone's pretty much in agreement that he tends to exaggerate and malinger, but whatever is wrong with him does not remotely excuse nor explain his violent conduct in his 27-day crime spree, which included raping a woman at gunpoint for hours, included forcing his way into the condominium of a recent immigrant to this country under the guise of being a maintenance worker in an attempt to sexually assault her. Mr. Medina is a career criminal. He takes what he wants from vulnerable people and he engages in extremely violent conduct, even in a prison setting, even against a nurse who declines to treat him in the way he thinks he should be treated, a prison barber. Mr. Medina would not have enjoyed a more favorable outcome even if Mr. Lewis had done precisely as habeas counsel suggests with benefit of hindsight. Mr. Lewis was an experienced, competent counsel who zealously represented his client throughout the case. And as the United States Supreme Court has made plain, it is important to consider the totality of that representation. And even if the performance is considered to be deficient, it cannot be said that no reasonable judge would reject the prejudice prong and find that Mr. Medina should be retried for his offenses. Now, if I might briefly comment, I did not file a response to the supplemental brief wherein counsel mentioned that this court would violate the Eighth Amendment if it were to apply Richter to this AEDPA case because it was a summary denial. I would only point out that the United States Supreme Court did so in Penholster. It applied Richter to a capital case, which is Penholster. Do you agree with his characterization of how California habeas, capital habeas works? There is a preference for raising habeas claims in the first instance in the Supreme Court, yes. Capital habeas. Right. Yes. My understanding, maybe I'm wrong, is that there is a preference but not a requirement. Is that true? That is correct, although I would say that presumptive timeliness, if you file within a certain time frame of your reply brief in your automatic appeal or within three years of appointment of state habeas counsel, it's presumed to be timely. That is certainly an encouragement. But you're correct. There is jurisdiction at every level for original habeas. Indeed, as long as you do not interfere with the appellate jurisdiction of the automatic appeal, you can proceed to the trial court. That has been done. In the Trailside Slayer case, there was a habeas filed in the Superior Court. There was a suggestion it was interfering with the Supreme Court's jurisdiction. The Supreme Court said it was not, and relief was granted. So it is entirely possible to pursue relief, but I do agree with counsel that there is a preference. I do not disagree with that. And a practice. It's almost universally done. Yes. I accept that it's a practice. I just couldn't find anything in the rules, and I understood what would be allowed to be different from what the practice or preference of the California Supreme Court would be. Well, and I don't want to suggest that you may well find, if you go into a Superior Court, that they would decline to entertain it. Yeah. But that would typically be in the 11th hour, in my experience. Okay. Any further questions? Thank you for your argument. Thank you, Your Honor. Mr. Bonner. Thank you, Your Honor. With regard to this idea that somebody being beaten in 1950 was somehow more acceptable than it is today, the point of the child abuse is that how it affects the child development, and whether that child is beaten in 1950 or 1450 or whatever year it was. Well, I think the point of that observation is that many, many, many people were treated that way, and most of them did not commit capital crimes. That's the point of the observation as to how it would impact a jury. Sure. But once again, the issue is it's life or death. It goes to his moral culpability, and the alternative is against life or death. But it is a moral culpability question, right? And so the notion is that if you, since the notion is a prediction as to how it would affect the child development, it's a moral culpability question. And if a large number of the people sitting there would say to them, oh, you know, I went to the same Catholic school and they did the same thing to me, but I'm not doing any of that stuff. I would say that Mr. Medina's child abuse was more than just a few slaps at a Catholic school. It was fairly significant, maybe not as bad as some cases that we've seen in the Federal court system. But certainly that was significant child abuse. I wanted to point out, counsel mentioned about the idea of whether he's a paranoid schizophrenic or antisocial. In the habeas proceedings, Dr. Rath, who had testified that the defendant was actually competent to be tried, when he was given the full record of the defendant's criminal history, he said that, you know, he opined that paranoid schizophrenia can be in remission for some period of time. And that that person can also exhibit symptoms that are consistent with antisocial personality. He also, so it's not that you can also have a paranoid schizophrenic who is genuinely a paranoid schizophrenic and can also malinger. So what we have here is a real, you know, for lack of a better term, mixed bag of nuts and candy. It's a real mishmash. But it's still presented to a jury because they're making the ultimate decision. Well, let's so assume. The question is the pressure. Once again, it's like what you have, you can just have that one sole holdout who says, you know what, this is enough for me to spare this man's life because he did not have a normal childhood. He did not have the, you know, this is not somebody worthy of being put to death. He doesn't rise to that level. And unless the court has any further questions, I'd be prepared to stand. Thank you, counsel. The case just heard will be submitted for decision. Thank you all for traveling here today. And we will be in recess.
judges: Thomas, Wardlaw, Berzon